UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH FORTIN,                              Civil Action No.: 18-10187
                                            Honorable David M. Lawson
                    Plaintiff               Magistrate Judge Elizabeth A. Stafford

v.

COMMISSIONER OF
SOCIAL SECURITY,

                    Defendant.

_____/

## REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF NOS. 11, 15]

Plaintiff Joseph Fortin appeals the final decision of defendant

Commissioner of Social Security (Commissioner), which denied his

application for disability income benefits (DIB) under the Social Security

Act.  Both parties have filed summary judgment motions, referred to this

Court for a report and recommendation under 28 U.S.C. § 636(b)(1)(B).

After review of the record, the Court finds that the administrative law

judge's (ALJ) decision properly applied the treating physician rule and

evaluated the side-effects of Fortin's medication and that the RFC was

supported by substantial evidence.

The parties also filed supplemental briefing on whether a remand for

a *de novo* administrative hearing is necessary because the ALJ below was not properly appointed under the appointments clause of the Constitution. [ECF No. 18, 20, 21, 22, 23].  As described below, the Court finds that Supreme Court precedent compels a finding that Fortin is entitled to remand for a *de novo* hearing.

The Court therefore **RECOMMENDS** that:

- Fortin's motion **[ECF No. 11]** be **GRANTED;**

- the Commissioner's motion **[ECF No. 15]** be **DENIED**; and

- this matter be **REMANDED** for a *de novo* hearing.

## I.    BACKGROUND

### A.    Fortin's Background and Disability Application

Born July 8, 1952, Fortin was 61 at the alleged disability on-set date and 62 on his date last insured (DLI), December 31, 2014.  [ECF No. 11, PageID.345-46].  He alleges a disability onset date of March 13, 2014. [ECF No. 9-2, Tr. 22].

After a hearing on July 19, 2016, during which Fortin and a vocational expert (VE) testified, the ALJ found that Fortin was not disabled.  [ECF No. 9-2, Tr. 20-27, 31-56].  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  [*Id.*, Tr. 1-4].  Fortin timely filed for judicial review.  [ECF No. 1].

It is undisputed that Fortin raised no Appointments Clause challenge before the Commissioner.

## II.   ANALYSIS

### A. Appointments Clause Challenge

#### 1.

The Court will begin by addressing Fortin's argument that his case should be remanded for a *de novo* administrative hearing because the ALJ below was not properly appointed according to the Appointments Clause. U.S. Const., Art. II, § 2, cl. 2   Fortin's argument flows from the recently-decided *Lucia v. SEC*, 138 S.Ct. 2044, 2051 (2018), which held that ALJs are "Officers of the United States" under the Appointments Clause, and thus must be appointed by "the President, a court of law, or a head of department." *Lucia* dictates that a party making "a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to relief." *Lucia*, 138 S.Ct. at 2055.  Although *Lucia* specifically addressed only SEC ALJs, the Solicitor General has acknowledged that the Supreme Court's holding encompassed all ALJs, and the Acting Commissioner of Social Security ratified the appointment of its ALJ's in July 2018 to address any Appointments Clause deficiency going forward.  *Page v. Comm'r of Soc.Sec.*, 344 F.Supp.3d 902, 2018 WL

3

5668850, at *1[1] (E.D. Mich., Oct. 31, 2018).  And here, the Commissioner does not argue that the ALJ below was properly appointed at the time of Fortin's hearing; it contends only that Fortin has forfeited this claim for relief by failing to present it at the administrative level.

The Commissioner's forfeiture argument is overwhelmingly endorsed by district courts across the country.  *See Velasquez on Behalf of Velasquez v. Berryhill*, No. CV 17-17740, 2018 WL 6920457, at *2 (E.D. La. Dec. 17, 2018), *adopted*, No. CV 17-17740, 2019 WL 77248 (E.D. La. Jan. 2, 2019) (collecting cases).  For example, in *Page*, an opinion from this district, the court held that a claimant who failed to raise the appointment clause issue at the administrative level waived her argument that the ALJ charged to adjudicate her claim was unconstitutionally appointed.  2018 WL 5668850, at *2-3.  As here, the *Page* plaintiff "failed to raise, much less develop the Appointments Clause issue at the administrative level although the split in authority over the constitutional adequacy of presiding ALJs occurred long before [Page's] application for benefits was considered by the Appeals Council."  *Id.* at *3.

---

[1] At the time of this report and recommendation, only star pages of *Page* are available.

The *Page* plaintiff cited an August 6, 2018 Social Security memorandum stating that ALJ's are "not to respond" to constitutional challenges to their appointments as a defense to her failure to raise the issue at the administrative level. *Id.* The court rejected that argument because the same memorandum states that such challenges may be brought before the Appeals Council. *Id.* "Moreover, a regulation in effect long prior to the events in question states that claimants may receive an expedited appeals process to challenge a 'provision in the law that you believe is unconstitutional.'" *Id.* (quoting 20 C.F.R. § 404.924(d)).

The *Page* court also pointed out that courts considering "the issue have unanimously rejected attacks on the validity of the ALJ's appointment under *Lucia* brought under 42 U.S.C. 405(g) where the claimant failed to make a constitutional challenge at the administrative level." *Id.* (citing *Stearns v. Berryhill,* 2018 WL 4380984, at *6 (N.D.Iowa September 14, 2018); *Garrison v. Berryhill*, 2018 Wl 4924554, at *2 (W.D.N.C. October 10, 2018); *Davidson v. Comm'r of Soc.Sec.*, 2018 WL 4680327, at *2 (M.D. Tenn., Sept. 28, 2018); *Salmeron v. Berryhill*, 2018 WL 4998107, at *3 (C.D.Cal. October 15, 2018)).

Bucking this trend, a magistrate judge in the Eastern District of Pennsylvania recommended in November 2018 that two cases be

remanded for proceedings before properly appointed ALJ's.  *Muhammad v. Berryhill*, No. 18-172 (E.D. Pa., Nov. 2, 2018); *Godschall v. Comm'r of Soc.Sec.*, No. 18-1647 (E.D. Pa., Nov. 2, 2018).  [ECF Nos. 22-1, 22-2]. Judge Rice disagreed with every other opinion that relied on forfeiture to reject the claimant's requests for remand, with his reasoning mainly spelled out in *Muhammad.*  [ECF No. 22-1].

## 2.

Judge Rice cited *Freytag v. Comm'r*, 501 U.S. 868 (1991), as holding that Appointments Clause objections are structural constitutional objections that can be considered on appeal even if they were not ruled on below. [*Id.*, PageID.525].   In *Freytag*, the petitioners argued that the assignment of their complex case to a special trial judge of the Tax Court violated the Appointments Clause.  501 U.S. at 878.   The Commissioner had argued that the petitioners waived their constitutional challenge by failing to timely object to the assignment of their cases to the special trial judge and even consenting to the assignment.  *Id.* at 878.  Rejecting this argument, the Court emphasized that the petitioners' constitutional challenge was "neither frivolous nor disingenuous," and raised an important separation-of-powers concern.  *Id.* at 878-79.

> The roots of the separation-of-powers concept embedded in the Appointments Clause are structural and political. Our

6

separation-of-powers jurisprudence generally focuses on the danger of one branch's aggrandizing its power at the expense of another branch. The Appointments Clause not only guards against this encroachment but also preserves another aspect of the Constitution's structural integrity by preventing the diffusion of the appointment power.

*Id.* at 878 (citation omitted).

The *Freytag* Court cited its precedent as "expressly includ[ing] Appointments Clause objections to judicial officers in the category of nonjurisdictional structural constitutional objections that could be considered on appeal whether or not they were ruled upon below." *Id.* at 878-79. And although the Court acknowledged that litigants must generally raise all issues and objections at trial, it concluded that the strong interest in maintaining separation of powers deemed this "one of those rare cases in which we should exercise our discretion to hear petitioners' challenge to the constitutional authority of the Special Trial Judge." *Id.* at 879.

The Commissioner emphasizes the *Freytag* Court's description of it being a "rare case" and argues that it created no categorical rule excusing Appointments Clause challenges from general waiver and forfeiture principles. [ECF No. 20, PageID.436]. As a general matter, this argument has support. *See, e.g, In re DBC*, 545 F.3d 1373, 1380 (Fed. Cir. 2008) ("The Supreme Court has never indicated that such challenges must be heard regardless of waiver."). But the Commissioner's argument is flawed

7

here because it presumes that general waiver and forfeiture principles apply to Social Security cases at the administrative level; they do not. As Judge Rice pointed out in *Muhammad,* the Supreme Court has in fact held that claimants need not exhaust issues before the Appeals Council to preserve them for judicial review. *Sims v. Apfel*, 530 U.S. 103 (2000).

### 3.

To reach its holding, *Sims* first noted that exhaustion requirements are "largely creatures of statute," and that "the Commissioner does not contend that any statute requires issue exhaustion in the request for review." *Id.* at 107-08. And while the Court has at times created issue-exhaustion requirements, "the desirability of a court imposing a requirement of issue exhaustion depends on the degree to which the analogy to normal adversarial litigation applies in a particular administrative proceeding." *Id.* at 108-09.

The *Sims* Court found that Social Security proceedings are dissimilar to normal adversarial litigation. In fact, "[t]he differences between courts and agencies are nowhere more pronounced than in Social Security proceedings." *Id.* at 110. That is because Social Security proceedings are "inquisitorial rather than adversarial"; no representative of the Commissioner appears before the ALJ to oppose benefits and the ALJ's

8

duty is "to investigate the facts and develop the arguments both for and against granting benefits." *Id.* at 110-11.  At the Appeals Council level, the Commissioner acts as an advisor rather than litigant. *Id.* at 111.  And the Council reviews the entire record instead of depending on the claimant to identify issues, which makes sense because some claimants are unrepresented or are represented by nonlawyers.  *Id.* at 111-12.  "Accordingly, we hold that a judicially created issue-exhaustion requirement is inappropriate. Claimants who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues." *Id.* at 112.

The Commissioner notes that the *Sims* majority expressly did not decide whether a claimant must exhaust issues before an ALJ.  [ECF No. 20, PageID.44, (citing *Sims*, 530 U.S. at 106)].  While true, it is hard to reconcile *Sims's* reasoning that Social Security proceedings before an ALJ are non-adversarial and thus profoundly dissimilar to court litigation with a finding that a judicially-created issue-exhaustion requirement is compatible with *Sims's* holding.  And the Commissioner does not show that the ALJ had any authority to address Fortin's constitutional challenge.  Indeed, in August 2018, ALJs were instructed not to respond to constitutional challenges.  *Page*, 2018 WL 5668850 at *3.  *Page* noted that a regulation

allows claimants to receive an expedited appeals process to challenge a "provision in the law that you believe is unconstitutional." § 404.924(d)). But the *Page* court did not address *Sims's* holding that a claimant's failure to raise an issue before the Appeals Council does not act as a waiver. *Sims*, 530 U.S at 112.

### 4.

The Commissioner cites *Mills v. Apfel*, 244 F.3d 1, 4 (1st Cir. 2001) and other opinions as holding that, despite *Sims,* claimants who fail to raise arguments before the ALJ waive them.  [ECF No. 20, PageID. 440-41 & n. 6].  Those opinions, however, referred to matters quintessentially within the jurisdiction of the ALJ.  For example, *Mills* had to do with the court's discretion to consider new evidence not presented to the ALJ; this issue was "entirely different" from *Sims's* decision to "reject[ ] a waiver claim and allow[ ] a social security applicant to raise in court an issue not raised at the Appeals Council stage."  *Mills,* 244 F.3d at 4.  And given *Sims's* holding that claimants need not exhaust issues at the Appeals Council level in Social Security cases, the Commissioner's citation to opinions requiring Appointments Clause challenges to be made at the administrative level are distinguishable.  *See, e.g., Kabani & Co. v. SEC*, No. 17-70786, 2018 WL 3828524, at *1 (9th Cir. Aug. 13, 2018) (distinguishable because of the

SEC's statutory exhaustion requirement (15 U.S.C. § 78y(c)); *N.L.R.B. v. RELCO Locomotives, Inc.*, 734 F.3d 764, 798 (8th Cir. 2013) (distinguishable because NLRA as an "explicit jurisdictional exhaustion requirement includes an exhaustion requirement."). Given *Sims*, this is indeed that rare type of case described in *Freytag* in which a court should entertain an Appointments Clause challenge despite it not being raised at the administrative level. *Freytag*, 501 U.S. at 879.

This Court is unsatisfied with the reasoning of other opinions that have considered and rejected *Sims's* applicability to the issue here. In *Gothard v. Comm'r of Social Security*, 17-13638 (E.D. Mich. October 10, 2018), the court found persuasive the reasoning of those opinions that the claimant could have raised an Appointments Clause argument before the ALJ. [ECF No. 23-1]. But as noted in *Sims*, the hearing before the ALJ is non-adversarial and the ALJ's duty is "to investigate the facts and develop the arguments both for and against granting benefits." 503 U.S. at 110-11. Claimants appearing before the ALJ may not even be represented by an attorney. *Id*. at 111-12. *Page* recognized that ALJs lack authority to decide constitutional challenges. *Page*, 2018 WL 5668850 at *3. The Court agrees with *Muhammad* that "it makes little sense to require a claimant to

raise an issue before an ALJ who is powerless to resolve it." [ECF No. 22-1, PageID.529].

Compelled by *Sims* and *Freytab*, the Court recommends that this matter be remanded to the Commissioner for a *de novo* hearing. This recommendation is not made lightly or without concern for its potential the impact on the Commissioner.

### B. The ALJ's Decision

The Court will next address Fortin's argument that the ALJ erred in deciding that Fortin is not disabled.

### 1.

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. §416.920(a)(4). Second, if the claimant has not had a severe impairment

12

or a combination of such impairments[2] for a continuous period of at least 12 months, no disability will be found.  *Id.*  Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.*  If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity (RFC), and will find the claimant not disabled if he or she can still do past relevant work. *Id.*  At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work.  *Id.*  The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached.  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Fortin was not disabled.  At the first step, he found that Fortin had not engaged in substantial gainful activity since the alleged onset date in March 2014. [ECF No.9-2, Tr. 22].  At the second step, he found that Fortin had the severe impairments of "spine disorder and dysfunction of major joints."

---

[2] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  § 920(c).

[*Id.*].  Next, the ALJ concluded that none of his impairments, either alone or in combination, met or medically equaled the severity of a listed impairment.  [*Id.*].

Between the third and fourth steps, the ALJ found that Fortin had the RFC to perform light work, except that he can only occasionally bend and stoop; "can only frequently handle and grasp with the left upper extremity; cannot reach overhead with the left, non-dominant upper extremity; and will be off-task for less than 10 percent of the workday." [*Id.*, Tr. 23]. At step four, the ALJ found that Fortin was capable of performing his past relevant work as a Program Planner, and thus not disabled.  [*Id.*, Tr. 26].

## 2.

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted).  Only the evidence in the record below may be considered when determining

14

whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Fortin argues that the RFC finding that he was capable of frequent handling and grasping with his left arm, despite suffering multiple comminuted fractures to his left ulna and the aggravation of pre-existing arthritis in his wrist in a March 2014 automobile accident, was not supported by substantial evidence. He contends that the ALJ erroneously concluded that he could handle and grasp with his left arm frequently when the evidence shows that, at most, he could handle and grasp with his left upper extremity only occasionally, a distinction Fortin argues would have prevented him from performing his past work and thereby been work-preclusive under the Grid Rules. [ECF No. 11, PageID.351-55]. Fortin also argues that the ALJ did not give proper weight to the opinions of treating physician Herminio Perez, M.D., about the frequency with which Fortin could handle and grasp with his left arm and hand. [*Id.*, PageID.356-59]. Fortin contends that the ALJ erred by failing to evaluate the impact of the side-effects of his medication. [*Id.,* PageID.359-61]. The Court disagrees, finding that these arguments lack merit.

**3.**

Fortin claims that the ALJ failed to give proper weight to Dr. Perez's opinion.  The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions about the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence.  *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43.  To assess a treating physician's opinion properly, an ALJ must analyze it under both prongs of the controlling weight test.  *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).  "Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors," and give appropriate weight to the opinion.  *Gentry*, 741 F.3d at 723.

Here, Dr. Perez's opinion followed injuries Fortin sustained from two accidents.  First, in March 2014, Fortin suffered a fractured left distal ulna and other injuries from a car accident.  [ECF No. 9-2, Tr. 23-24]. Treatment records reflect that Fortin underwent several weeks of physical therapy and received prescription medication and a TENS unit for pain.  [ECF No. 9-7,

16

Tr. 220-21].  Pre-existing arthritis in Fortin's left wrist was likely aggravated by the auto accident, as well.  [*Id.*, Tr. 194].  By July 2014, the fracture was healed and not "clinically significant."  [*Id.*]  Upper extremity strength on the left was 4/5, grip strength was 5/5 bilaterally.  [*Id.*, Tr. 222].  Continued symptoms and restricted ability to supinate, pronate, palmar and dorsiflex were linked to the prior degenerative changes in the wrist.  [*Id.*, Tr. 194].  The records reflect that Fortin received no further treatment relating to his left arm fracture and degenerative wrist condition after July 2014.  [*Id.*, Tr. 248].

Fortin's second car accident was in December 2014, just before his DLI.  [*Id.*]  He began experiencing increasing neck and left shoulder pain after that second accident.  [*Id.*, Tr. 256, 259]. Fortin first sought treatment for the increased neck and left shoulder pain in February 2015. [*Id.*].  He was diagnosed with a left torn rotator cuff, and underwent physical therapy and subacromial steroid injections in 2015 and 2016. [*Id.,*Tr. 289].  An ultrasound of his left shoulder in August 2015 revealed a 1.5cm tear in the rotator cuff; the tear grew to 2.5cm x 2cm by June 2016, when a follow-up ultrasound was performed.  [*Id.,* Tr. 296].  Arthroscopic RTC repair surgery was scheduled for two weeks after the hearing. [*Id.* Tr. 297].

Dr. Perez, Fortin's primary care provider, completed a physical functional assessment in August 2016. [*Id.*, Tr. 301-02]. On the form, Dr. Perez indicated that Fortin could not perform any reaching above shoulder, grasping, holding, fine manipulation, pushing or pulling with his left arm, and that these limitations began in December 2014.  [*Id.*]

After noting many of the restrictions set forth in Perez's opinion, the ALJ "accorded it limited weight," reasoning that Dr. Perez did not sufficiently cite objective signs, symptoms, or laboratory findings from the relevant period to support his conclusions about Fortin's limitations.  [ECF No. 9-2, Tr. 25-26].  The ALJ also noted that Dr. Perez's opinion was inconsistent with Fortin's history of conservative treatment of physical therapy and medication and reported activities of daily living, including driving and shopping, and that the treatment records for the relevant period, March through December 2014, were very limited. [*Id.*]

**4.**

Fortin accuses the ALJ of substituting his own opinions for those of Dr. Perez, and discounting the doctor's opinions without good reason supported by the evidence from the record.  [ECF No. 11, PageID.356-57]. But, in giving Dr. Perez's opinions less than controlling weight, the ALJ rightly identified the lack of supporting clinical and diagnostic findings within

18

the relevant period.  [ECF No. 9-2, Tr.25-26].  A review of the records reveals Fortin did not seek treatment for his left arm or wrist after July 2014, after his treating orthopedic surgeon determined that the ulna had healed and was not clinically significant, and that he should consult a hand specialist for any further treatment of his wrist.  [ECF No. 9-7, Tr. 194.]  And Fortin did not seek treatment for increased neck and left shoulder pain, attributed to his December 2014 car accident until February 6, 2015, about six weeks after his DLI.  [*Id.*, Tr. 259].

As the ALJ assessed, Dr. Perez's opinion about the severity of Fortin's limitations was also inconsistent with other substantial evidence. The ALJ emphasized treatment notes showing successful completion of physical therapy and the clinical resolution of the fractured left arm, 4/5 left arm strength and 5/5 grip strength.  [*Id.*, Tr. 24].  As noted, Fortin did not seek treatment for exacerbations to his condition from the second car accident until February 2015.  And January 2016 treatment records reflect he had had only one session of physical therapy and no injections for the torn rotator cuff injury to his left shoulder, diagnosed in August 2015. [*Id.*, Tr. 286-288].

The ALJ's decision also shows that he properly considered the regulatory factors—the length, frequency, nature, and extent of the

19

relationship between Fortin and Dr. Perez, and the supportability and consistency of his conclusions with the other substantial evidence of record—and his decision to give little weight to Dr. Perez's opinion was supported by those factors. *See Gentry*, 743 F.3d at 727-28; *Gayheart*, 710 F.3d at 376.

The ALJ noted that Fortin's treatment records for March through December are very limited. [ECF No. 9-2, Tr. 24]. Fortin provided records[3] of treatment for his fractured left arm from March 13, 2014 to July 13, 2014. [ECF No. 9-7, Tr. 193-212, 215-24]. His records also reflect an office visit to Dr. Perez for low back pain in September 2014 and for an annual check-up in November 2014. [*Id.*, Tr. 224-39]. The November record notes only low back tenderness and erratic sleep as ongoing problems from the March 2014 auto accident. [*Id.*, Tr. 231].

Substantial evidence supports the ALJ's conclusion that Dr. Perez's findings were unsupported by clinical or diagnostic evidence and were inconsistent with the conservative treatment Fortin received and his continued ability to manage activities like driving and shopping. The Court thus finds no error in the weight the ALJ gave to Dr. Perez's opinion.

---

[3] These records are from orthopedist Benedetto Pellerito, M.D., not Dr. Perez.

**5.**

Fortin also argues that the ALJ erred in crafting an RFC requiring frequent handling and grasping with his left arm, as opposed to only occasional handling and grasping.  Fortin bears the burden of establishing more restrictive RFC limitations than those assessed by the ALJ. *See Jordan v. Comm'r of Soc.Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). The only evidence Fortin relies on to support a more restrictive left arm use limitation is Dr. Perez's opinion, and the Court has already concluded that the ALJ did not err in giving that opinion limited weight.  Fortin argues that the significant nature of his March 2014 left arm fractures justifies greater restriction, but he cannot rest on diagnoses alone; a diagnosis says nothing about its disabling effects. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).

The ALJ's RFC assessment reflects his consideration of the limited and conservative treatment Fortin received during the relevant period, his continued ability to drive and shop, as well as the opinion of the State agency consultant B. D. Choi, M.D., that Fortin required no manual restrictions for his left upper extremity.  [ECF No. 9-2, Tr. 25; ECF No. 9-3, Tr. 62].  Fortin has not sustained his burden of showing that he required a more restrictive RFC.

**6.**

Fortin argues that the ALJ failed to explain how or if he considered

Fortin's medication side-effects in reaching his conclusion.  To the contrary,

the ALJ specifically noted that Fortin's continued ability to drive was

inconsistent with his claim that medication side-effects, like drowsiness,

prevented him from performing light work.  [ECF No. 9-2, Tr. 25].

## III.    CONCLUSION

Because of the Appointments Clause violation described above, the

Court **RECOMMENDS** that Fortin's motion [ECF No. 11] be **GRANTED,**

the Commissioner's motion [ECF No. 15] be **DENIED**; and that this matter

be remanded so that Fortin may receive a *de novo* hearing in front of a

properly appointed ALJ.  If the Court's determinations about the

Appointments Clause are not adopted, the Commissioner's decision should

be affirmed.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
Dated: February 1, 2019                 United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this

Report and Recommendation, but must act within fourteen days of service

of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ.

P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.