UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH A. FORTIN,

                Plaintiff,                       Case Number 18-10187
                                             Honorable David M. Lawson
v.                                       Magistrate Judge Elizabeth A. Stafford

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____/

## OPINION AND ORDER ADOPTING IN PART AND REJECTING IN PART MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AFFIRMING THE FINDINGS OF THE COMMISSIONER, AND DISMISSING COMPLAINT

The plaintiff filed the present action seeking review of the Commissioner's decision denying his claim for disability benefits under Title II of the Social Security Act. The case was referred to United States Magistrate Judge Elizabeth A. Stafford under 28 U.S.C. § 636(b)(1)(B) and E.D. Mich. LR 72.1(b)(3). Thereafter, the plaintiff filed a motion for summary judgment to reverse the decision of the Commissioner and remand the case for an award of benefits or for further consideration by the administrative law judge (ALJ). The defendant filed a motion for summary judgment requesting affirmance of the decision of the Commissioner. The plaintiff then filed a supplemental brief arguing that the ALJ's appointment violated the Appointments Clause, U.S. Const. Art. II, § 2, cl. 2, and therefore he is entitled to a remand for a new hearing before a different, properly-appointed ALJ. Magistrate Judge Stafford filed a report on February 1, 2019 recommending that the plaintiff's motion for summary judgment be granted on that ground, and

the matter should be remanded for a fresh administrative hearing.   Judge Stafford recommended in the alternative that the Court grant the Commissioner's motion for summary judgment and affirm the decision of the Commissioner if the Court disagrees with the proposed resolution of the Appointments Clause issue.   Both sides filed timely objections and responses.

I.

The plaintiff, who is now 66 years old, filed his application for disability insurance benefits on October 21, 2014, when he was 62.   In the application that is the subject of the present appeal, the plaintiff alleged a disability onset date of March 13, 2014.   The plaintiff was involved in an automobile accident on his disability onset date and a second collision in December 2014.   The plaintiff alleged disability due to spinal fusion of cervical vertebrae, right shoulder rotator cuff surgery, multiple breaks to his left arm and wrist, and back and hip pain.

The plaintiff's application for disability benefits was denied initially on December 23, 2014.   He timely filed a request for an administrative hearing, and on July 19, 2016, the plaintiff appeared before ALJ Timothy J. Christensen.   ALJ Christensen, it appears, was appointed from a pool of applicants maintained by the Office of Personnel Management, s*ee Menoken v. McGettigan*, 273 F. Supp. 3d 188, 192 (D.D.C. 2017), and not by a head of a department.

On September 28, 2016, ALJ Christensen issued a written decision in which he found that the plaintiff was not disabled.   On November 28, 2017, the Appeals Council denied the plaintiff's request for review of the ALJ's decision.   The plaintiff then filed his complaint seeking judicial review.

ALJ Christensen reached his conclusion that the plaintiff was not disabled by applying the five-step sequential analysis prescribed by the Secretary in 20 C.F.R. §404.1520(a). He found that the plaintiff had not engaged in substantial gainful activity since March 13, 2014 through the date he was last insured of December 31, 2014 (step one); the plaintiff suffered from spine disorder and dysfunction of the major joints, impairments which were "severe" within the meaning of the Social Security Act (step two); and that none of those impairments alone or in combination met or equaled a listing in the regulations (step three).

Before proceeding further, the ALJ determined that the plaintiff retained the functional capacity (RFC) to perform light work, except that the plaintiff: (1) cannot engage in occasional "postural" such as bending and stooping; (2) can only frequently handle and grasp with the left upper extremity; (3) cannot reach overhead with the left, non-dominant upper extremity; and (4) would be off-task for less than 10 percent of the workday.

At step four, the ALJ found that the plaintiff's RFC allowed him to perform the duties required for his past relevant work as a program planner, which was performed at the sedentary exertional level. Based on those findings, the ALJ did not proceed to the fifth step and concluded that the plaintiff was not disabled within the meaning of the Social Security Act.

The plaintiff raised three arguments in his motion for summary judgment regarding the ALJ's assessment of his RFC. He said that the ALJ should have adopted a more restrictive RFC based on the plaintiff's upper extremity limitations; the ALJ improperly discounted the opinions of the plaintiff's treating physician regarding his limitations; and the ALJ did not consider the side effects of the plaintiff's medications in formulating the RFC. In a supplemental brief, the plaintiff

for the first time challenged the validity of ALJ Christensen's appointment and requested a remand and a *de novo* hearing before a different ALJ.

The magistrate judge suggested that the constitutional challenge had merit. She recommended, on that basis, that the case be remanded for a new hearing before a different ALJ.

Alternatively, the magistrate judge rejected each of the plaintiff's merits arguments. She concluded that the ALJ appropriately accorded little weight to the opinion of the plaintiff's treating physician, based on the absence of clinical or diagnostic evidence and in light of the conservative treatment the plaintiff received following his car accidents. The magistrate judge then found that the ALJ did not err by crafting a less restrictive RFC based on the plaintiff's conservative treatment during the relevant period, his continued ability to drive and shop, and the consulting physician's opinion that the plaintiff required no manual restrictions for his left upper extremity. And lastly, the magistrate judge concluded, contrary to the plaintiff's contention, that the ALJ considered the side effects of the plaintiff's pain medication and specifically noted that the plaintiff's ability to drive was inconsistent with his claim that his medication's side effects, including drowsiness, prevented him from performing light work.

## II.

Both parties filed objections to the report and recommendation. The filing of timely objections to a report and recommendation requires the court to "make a de novo determination of those portions of the report or specified findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667 (1980); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). This *de novo* review requires the court to re-examine all

of the relevant evidence previously reviewed by the magistrate judge in order to determine whether the recommendation should be accepted, rejected, or modified in whole or in part. 28 U.S.C. § 636(b)(1).

"The filing of objections provides the district court with the opportunity to consider the specific contentions of the parties and to correct any errors immediately," *Walters*, 638 F.2d at 950, enabling the court "to focus attention on those issues-factual and legal-that are at the heart of the parties' dispute," *Thomas v. Arn*, 474 U.S. 140, 147 (1985). As a result, "'[o]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have.'" *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006) (quoting *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987)).

## A. Commissioner's Objection

The Commissioner objects to the magistrate judge's recommendation that the Court remand the case for a *de novo* hearing to remedy the Appointments Clause violation. The foundation of the magistrate judge's recommendation was *Lucia v. S.E.C.*, --- U.S. ---, 138 S. Ct. 2044 (2018), where the Supreme Court addressed an Appointments Clause challenge in a case originating with the Securities and Exchange Commission (SEC). ALJs who heard administrative proceedings under the Securities and Exchange Act of 1934 were appointed not by the Commission itself, but by SEC staff members. 138 S. Ct. at 2049. The Court held that those ALJs were "Officers of the United States" within the meaning of the Appointments Clause, and therefore must be appointed as that Clause prescribes. *Id.* at 2054. Because the ALJ's were

"inferior Officers," Congress could vest authority for their appointment "in the President alone, in the Courts of Law, or in the Heads of Departments." *Id.* at 2050 (quoting U.S. Const. Art. II, § 2, cl. 2). Although the Court believed that the Commission was a "Head[] of Department[]," SEC staff members were not. Therefore, the Court concluded, the ALJ was not properly appointed, and Lucia was entitled to a new hearing before a different and properly-appointed ALJ. *Id.* at 2055.

The Commissioner here does not quarrel with the argument that ALJ Christensen was improperly appointed in violation of the Appointments Clause. She also concedes "that 'one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case' is entitled to relief." *Lucia*, 138 S. Ct. at 2055 (quoting *Ryder v. United States,* 515 U.S. 177, 182-83 (1995)). Instead, she insists that the plaintiff forfeited his Appointments Clause argument because it was not "timely": he never raised it at the administrative level. The magistrate judge suggested, however, that the plaintiff was not required to do so, and he did not forfeit his argument. The Commissioner objects to that conclusion.

This issue is not novel. It has come up in dozens of Social Security cases since *Lucia* was decided. The magistrate judge acknowledged that district courts across the country "overwhelmingly" have endorsed the Commissioner's position. She nevertheless adopted the reasoning of Magistrate Judge Timothy Rice of the Eastern District of Pennsylvania, who concluded that general waiver and forfeiture principles do not apply to Social Security cases at the administrative level. *See Muhammad v. Berryhill*, No. 18-172 (E.D. Pa. Nov. 2, 2018).

This conclusion collides with a fundament of administrative law "that orderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has opportunity for correction in order to raise issues reviewable by the courts." *United States v. L. A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952). Nonetheless, Judge Rice and the magistrate judge in this case found authority to depart from this basic principle in *Freytag v. Commissioner of Internal Revenue*, 501 U.S. 868 (1991), and *Sims v. Apfel*, 530 U.S. 103 (2000).

In *Freytag*, the Supreme Court rejected an Appointments Clause challenge to the authority of the Chief Judge of the United States Tax Court to appoint special trial judges to hear certain tax cases. Before reaching the merits of that inquiry, the Court concluded that the petitioners did not waive their right to raise that issue by failing to raise a timely objection before the special tax court judge. The Court explained that "Appointments Clause objections to judicial officers in the category of nonjurisdictional structural constitutional objections [may] be considered on appeal whether or not they were ruled upon below." 501 U.S. at 878-79 (citing *Glidden Co v. Zdanok*, 370 U.S. 530 (1962)). The Court noted that the challenge is "neither frivolous nor disingenuous" and that the "alleged defect in the appointment of the Special Trial Judge goes to the validity of the Tax Court proceeding that is the basis for this litigation." *Id.* at 879. In allowing the claim to proceed, the Court cautioned that "this is one of those rare cases in which we should exercise our discretion to hear petitioners' challenge to the constitutional authority of the Special Trial Judge." *Ibid.*

Four years later, in *Ryder v. United States*, 515 U.S. 177 (1995), the Court sustained an Appointments Clause challenge by a member of the United States Coast Guard to the composition

of the Coast Guard Court of Military Review. On the way to the merits, the Court considered three cases where unsuccessful litigants raised Appointments Clause challenges on appeal for the first time, only to have them rejected. The Court noted, "Unlike the defendants in *Ball, McDowell,* and *Ward,* petitioner raised his objection to the judges' titles before those very judges and prior to their action on his case. . . . We think that one who makes a *timely* challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to a decision on the merits of the question and whatever relief may be appropriate if a violation indeed occurred. Any other rule would create a disincentive to raise Appointments Clause challenges with respect to questionable judicial appointments." 515 U.S. at 182-83 (emphasis added). The Court imported the "timely challenge" language into *Lucia*. *Lucia*, 138 S. Ct. at 2055.

The magistrate judge acknowledged that *Freytag* did not create a categorical exception for Appointments Clause challenges. Indeed, the Supreme Court found it to be a "rare case." *Freytag*, 501 U.S. at 879. She was persuaded, however, that language in *Sims v. Apfel* counseled in favor of relaxing the requirement of issue exhaustion in Social Security cases. The issue presented in *Sims* was whether an unsuccessful Social Security claimant was required to raise to the Social Security Appeals Council all the issues he presented for review in a later judicial proceeding. The Court held that "[Social Security claimants] who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues." 530 U.S. at 112. The Court initially noted that the Social Security Act and its accompanying regulations do not require issue exhaustion. *Id.* at 108. But it acknowledged that it previously had "imposed an issue-exhaustion requirement even in the

absence of a statute or regulation." *Ibid.*   In siding with the Eighth Circuit, the Court explained that "the general rule of issue exhaustion makes little sense in this particular context" where the non-adversarial nature of the proceeding vests in the Council, not the claimant, the "primary responsibility for identifying and developing the issues." *Ibid.* (internal marks omitted) (citing *Harwood v. Apfel*, 186 F.3d 1039, 1042 (8th Cir. 1999)).   The plurality had observed earlier in the opinion that "[S]ocial Security proceedings are inquisitorial rather than adversarial.   It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits . . . and the Council's review is similarly broad." *Id.* at 110-11.   But the plurality expressly, albeit parenthetically, noted that "[w]hether a claimant must exhaust issues before the ALJ is not before us," *id.* at 107, leaving open the premise that judicially-created issue exhaustion at the ALJ level makes good sense.

The Commissioner argues that the magistrate judge impermissibly expanded *Sims*'s limited holding.   For several reasons, the Court agrees.   First, *Sims* addressed the issue-exhaustion requirement in a vastly different substantive and procedural setting.   The issues Sims raised on judicial review all concerned the ALJ's disposition of the evidentiary material before him. *Id.* at 105-06 ("[T]hat (1) the ALJ had made selective use of the record; (2) the questions the ALJ had posed to a vocational expert to determine petitioner's ability to work were defective because they omitted several of petitioner's ailments; and (3) in light of certain peculiarities in the medical evidence, the ALJ should have ordered a consultative examination.").   The Court noted that because the Appeals Council was charged with the responsibility for developing the issues when it reviewed the ALJ's decision, the analogy to "normal adversarial litigation" was weak and

undercut the benefits served by the issue-exhaustion rule. *Id.* at 109-110, 112. That would be particularly true where the issues that the claimant sought to raise in judicial proceedings focused directly on the disability determination. However, where the challenge is to the structural integrity of the process itself, the adversarial nature of the litigation reemerges. It only makes sense that such challenges should be made "before those very judges and prior to their action on his case," *Ryder*, 515 U.S. at 182, while the agency "has opportunity for correction." *L.A. Tucker Truck Lines, Inc.*, 344 U.S. at 37.

Second, as noted earlier, the *Sims* Court addressed issue exhaustion at the administrative appeal level. At that stage of administrative proceedings, "the regulations provide no notice that claimants must . . . raise specific issues before the Appeals Council to reserve them for review in federal court. To the contrary, the relevant regulations and procedures indicate that issue exhaustion before the Appeals Council is *not* required." *Sims*, 530 U.S. at 113 (O'Connor, J., concurring in part and concurring in the judgment) (citations omitted). The parties agree that in this case, the plaintiff did not raise his Appointments Clause challenge at *any* administrative level, and only brought it up in a supplemental brief filed after the summary judgment briefing had closed. *Sims* specifically did not consider the wisdom of requiring issue exhaustion at the ALJ level, nor did it furnish a justification for departing from the general rule requiring it.

Third, the *Sims* claimant presented issues to the district court for judicial review that the Appeals Council naturally would have had to consider in making its "inquisitorial" disability determination. There is no reason that the Appeals Council would have questioned the qualifications of the ALJ to entertain the case. Although nothing in *Sims* ties the application of

the issue-exhaustion rule to the nature of the issues raised, it does establish an exception to an "ordinary principle[] of administrative law," *id.* at 114 (Breyer, J., dissenting), that deserves some measure of justification. Certainly, extending that exception would require a corresponding measure of justification that is absent here.

And there is good reason not to extend that exception. As one court observed, "*Ryder's* rule that relief is due for 'timely' challenges was created as an incentive 'to raise Appointments Clause challenges with respect to questionable judicial appointments.'" *Abbington v. Berryhill*, No. 17-00552, 2018 WL 6571208, at *7 (S.D. Ala. Dec. 13, 2018) (quoting *Ryder*, 515 U.S. at 182-83). "Regularly permitting unsuccessful claimants to raise Appointments Clause challenges for the first time on judicial review, especially when the arguments underlying those challenges were available at the administrative level, would 'encourage the practice of "sandbagging": suggesting or permitting, for strategic reasons, that the [adjudicative entity] pursue a certain course, and later — if the outcome is unfavorable — claiming that the course followed was reversible error.'" *Ibid.* (quoting *Freytag*, 501 U.S. at 895 (Scalia, J., concurring in part and concurring in the judgment)).

Judge Rice made one other point in his report and recommendation that requires comment. He believed that ALJs lack the requisite authority to address Appointments Clause questions, based on an emergency message issued by the Social Security Administration in January 2018 that "ALJs were powerless to decide constitutional issues." *Muhammad* at 11. And Judge Stafford expressed similar concern based on the updated emergency message issued by the SSA's Office of Hearings Operations on August 6, 2018, approximately two years after ALJ Christensen issued

his decision. The message directed ALJs who are or have been presented with Appointments Clause challenges after July 16, 2018 — the date on which the Acting Commissioner ratified the appointment of ALJs by approving the appointments as her own to cure any constitutional error — only to respond orally at the hearing that "the hearing decision will acknowledge that the argument was raised" and to acknowledge in the written determination that the ratification of the ALJ's appointment renders the argument meritless. *See Social Security Administration EM-18003 REV 2*, Important Information Regarding Possible Challenges to the Appointment of Administrative Law Judges in SSA's Administrative Process—UPDATE. If the challenge was raised before July 16, 2018, however, the message indicated that the challenge was "acknowledged in the record and entered into the agency's case processing systems for any necessary action." *Ibid. See also Bizarre v. Berryhill*, --- F. Supp. 3d ---, 2019 WL 1014194, at *3 (M.D. Penn. Mar. 4, 2019) ("The Commissioner does not suggest (and we have found no authority indicating) that a Social Security ALJ would be authorized to resolve or redress a constitutional challenge to his or her own authority.").

The Supreme Court has offered good reasons why a seemingly rigid agency policy against a litigant's position should not excuse the requirement to raise objections at the administrative level:

> It is urged in this case that the Commission had a predetermined policy on this subject which would have required it to overrule the objection if made. While this may well be true, the Commission is obliged to deal with a large number of like cases. Repetition of the objection in them might lead to a change of policy, or, if it did not, the Commission would at least be put on notice of the accumulating risk of wholesale reversals being incurred by its persistence. Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the

administrative body not only has erred but has erred against objection made at the time appropriate under its practice.

*L.A. Tucker Truck Lines, Inc.*, 344 U.S. at 37 (footnote omitted).

Moreover, *Jones Brothers, Incorporated v. Secretary of Labor*, 898 F.3d 669 (6th Cir. 2018), decided approximately one month after *Lucia*, supports the conclusion that Social Security ALJs have the power to resolve Appointments Clause claims. The court explained that ALJs have the power to decide as-applied challenges to their appointments, but they cannot adjudicate facial challenges. *See id.* at 674-75. Admittedly, that case is not squarely on point, as it dealt with a statutory requirement to exhaust issues at the administrative level under the Mine Act. *Id.* at 673 (quoting 30 U.S.C. § 823(d)(2)(A)(ii)). But the court noted that "administrative agencies may [not] look the other way when it comes to as-applied constitutional challenges and constitutional-avoidance arguments." *Id.* at 674. It found no exception to the general rule that "[a]dministrative exhaustion is thus typically required so long as there is 'the possibility of some relief for the action complained of,' even if it is not the petitioner's preferred remedy." *Id.* at 676 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)).

For these reasons, the Court must respectfully disagree with the magistrate judge's suggestion that Social Security claimants, including the plaintiff here, have no obligation to raise and exhaust Appointments Clause challenges at the administrative level before seeking judicial review. Other courts overwhelmingly agree, albeit for somewhat different reasons. *See e.g.*, *Page v. Comm'r Soc. Sec.*, 344 F. Supp. 3d 902, 904 (E.D. Mich. Oct. 31, 2018) (Whalen, M.J.) (denying leave to file amended complaint and noting that "[a]s in *Jones Brothers*, the current challenge pertains to the Defendant's appointment duties under the applicable statutes as

-13-

applied."); *Hutchins v. Berryhill*, No. 18-10182, 2019 WL 1353955, at *3 (E.D. Mich. Mar. 26, 2019) (Cleland, J.) ("Because Plaintiff here failed to raise his argument at any point in his administrative proceedings, the court will not entertain the argument at this time."); *Axley v. Comm'r Soc. Sec.*, No. 18-1106, 2019 WL 489998, at *2 (W.D. Tenn. Feb. 7, 2019) ("Plaintiff's failure to assert a challenge to the ALJ's appointment at any point in the administrative proceedings forfeited his Appointments Clause claim."); *Gothard v. Comm'r Soc. Sec.*, No. 17-13638, 2019 WL 396785, at *3 (E.D. Mich. Jan. 31, 2019) (Ludington, J.) (declining to address whether Plaintiff "waived her [A]ppointments [C]lause challenge by failing to raise it before the ALJ . . . because Plaintiff's argument concerning the applicability of *Lucia* has no merit."); *Dierker v. Berryhill*, No. 18-145, 2019 WL 246429, at *4 (S.D. Cal. Jan. 16, 2019) ("Plaintiff raised his challenge for the first time in his October 4, 2018 letter brief. . . . Plaintiff's failure to timely raise his Appointments Clause challenge forfeits the claim as untimely."), *adopted by Dierker v. Berryhill*, No. 18-145, 2019 WL 446231 (S.D. Cal. Feb. 5, 2019); *Nickum v. Berryhill*, No. 17-2011, 2018 WL 6436091, at *6 (D. Kan. Dec. 7, 2018) ("Unlike the case in *Lucia*, plaintiff in the case before the court never raised the Appointments Clause issue before the agency."); *Blocker v. Colvin*, No. 14-02602, 2018 WL 6424706, *6 (W.D. Tenn. Dec. 6, 2018) ("Here, whether the ALJ had the constitutional authority to adjudicate Plaintiff's dispute would be an as-applied challenge . . . . Because Plaintiff failed to assert the challenge at the administrative level, the Court finds that the challenge is forfeited."); *Willis v. Comm'r Soc. Sec.*, No. 18-158, 2018 WL 6381066, at *3 (S.D. Ohio Dec. 6, 2018) ("Plaintiff did not raise the Appointments Clause issue before the ALJ or the Appeals Council; therefore, the undersigned finds that she has forfeited this argument.");

*Faulkner v. Comm'r Soc. Sec.*, No. 17-01197, 2018 WL 6059403, at *3 (W.D. Tenn. Nov. 19, 2018) ("Plaintiff's failure to raise his Appointments Clause challenge at any point in the administrative process or show good cause why he did not do so forfeits his claim."); *Flack v. Comm'r Soc. Sec.*, No. 18-501, 2018 WL 6011147, at *4 (S.D. Ohio Nov. 16, 2018) ("In light of the Supreme Court's decision in *Lucia* and subsequent courts' analyses of the issue, the Court finds that, even considering the directive of the emergency message, Plaintiff has forfeited her Appointment Clause claim."); *Davidson v. Comm'r Soc. Sec.*, No. 16-00102, 2018 WL 4680327, at *2 (M.D. Tenn. Sept. 28, 2018) ("Because Plaintiff did not raise her as applied constitutional challenge at the administrative level or argue that she had good cause for her failure to do so, Plaintiff has waived her challenge to the appointment of her Administrative Law Judge.").

Because the plaintiff did not raise his Appointments Clause challenge until he sought judicial review, and late in this proceeding at that, he has forfeited the issue. The Commissioner's objection will be sustained.

### B.   Plaintiff's Objections

The plaintiff filed three objections to the magistrate judge's alternate recommendation.

### 1.   First Objection

The plaintiff argues that the magistrate judge's conclusion that the ALJ properly discounted the weight of the treating physician's opinion is not persuasive and that the report did not adequately address the points raised in the plaintiff's motion for summary judgment. The plaintiff asserts that neither the magistrate judge nor the ALJ adequately discussed the implications of the

plaintiff's long-term relationship with his treating physician, Dr. Perez, which gave Dr. Perez a "unique, longitudinal understanding" of the plaintiff's functional capacity.

The Commissioner responds that the ALJ in fact considered the nature and length of Dr. Perez's relationship with the plaintiff, and although those factors weigh in favor of crediting Dr. Perez's opinion, the ALJ appropriately relied on the other factors enumerated in 20 C.F.R. § 404.1527. And in any event, the ALJ is not required to perform a step-by-step analysis of each factor so long as his finding is supported by "good reasons."

The Sixth Circuit has held that reversal is required in a Social Security disability benefits case where the ALJ rejects a treating physician's opinion as to the restrictions on a claimant's ability to work and fails to give good reasons for not giving weight to the opinion. *Wilson v. Comm'r of Social Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). There, the court stated that "pursuant to [20 C.F.R. § 404.1527(c)(2)], a decision denying benefits 'must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* at 544 (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (1996)).

The magistrate judge found that the ALJ gave adequate reasons for not affording Dr. Perez's opinion controlling weight. The plaintiff does not take issue with that determination in his objections.

The magistrate judge also found justification for the ALJ giving the opinion only "limited weight." See Tr. 25. The plaintiff objects to that finding, contending that the ALJ did not assess

-16-

all the required factors, including the length of Dr. Perez's treatment relationship with the plaintiff. The regulations require the ALJ to consider the "[l]ength of the treatment relationship and the frequency," and the "[n]ature and extent of the treatment relationship" when determining what weight to give the opinion of a treating source. 20 C.F.R. § 404.1527(c)(2)(1)(i), (ii). The plaintiff insists that the ALJ did not comply with that directive. However, "[t]he ALJ need not perform an exhaustive, step-by-step analysis of each factor; []he need only provide 'good reasons' for both [his] decision not to afford the physician's opinion controlling weight and for [his] ultimate weighing of the opinion." *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017), *cert. granted sub nom. Biestek v. Berryhill*, 138 S. Ct. 2677 (2018) (citing *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804-05 (6th Cir. 2011); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009); 20 C.F.R. § 404.1527(c)(2)).

Here, the ALJ noted that Dr. Perez was the plaintiff's "family physician," Tr. 25, which indicates an acknowledgement of an ongoing physician-patient relationship. He noted that Dr. Perez's "documented treatment" was limited to conservative care. And he discussed other evidence in the record that was inconsistent with Dr. Perez's opinion. Tr. 25-26. The magistrate judge correctly concluded that the ALJ did all he was required to do when assessing Dr. Perez's opinion.

The plaintiff's first objection will be overruled.

## 2. Second Objection

The plaintiff's second objection flows from the first. He argues that the magistrate judge should have found that the ALJ failed to accord Dr. Perez's opinion appropriate weight, and failed

-17-

to consider other evidence, when formulating the RFC, especially for upper extremity limitations. As noted earlier, he believes his RFC was overstated.

The ALJ's specific determination of RFC must be supported by substantial evidence, but the claimant bears the burden of demonstrating the need for a more restrictive RFC. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) (noting that "[t]he claimant . . . retains the burden of proving her lack of residual functional capacity") (citing *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999)). As noted above, the magistrate judge correctly determined that the ALJ appropriately assessed Dr. Perez's opinion. And the plaintiff has not identified what "other" evidence the ALJ should have considered. He has not met his burden of showing a need for a more restrictive RFC, and his second objection will be overruled.

### 3. Third Objection

The plaintiff argues that the magistrate judge erred by approving the ALJ's assessment of the impact (or lack of it) of the plaintiff's medication's side effects. The plaintiff contends that the ALJ failed to address the plaintiff's testimony that he experiences drowsiness in the first hour and slowed thought for two hours after taking his medication. He argues that the ALJ's finding based on the plaintiff's ability to drive was insufficient in light of his own testimony and Dr. Perez's opinion regarding the side effects.

Much of what the plaintiff argues here ignores the timing of the evidence he references. For instance, Dr. Perez did not complete his August 2016 assessment of the plaintiff until almost two years after the plaintiff's insured status expired, that is, well after the relevant time period.

The medical records do not contain *any* complaints about his medication's side effects before the date last insured.

To qualify for disability insurance benefits, the plaintiff must not only establish that he is disabled, but also that he was insured within the meaning of the Social Security Act, and became disabled while enjoying insured status. *See* 42 U.S.C. §§ 416(i), 423(d)(1)(A); *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). Medical evidence is relevant to prove a disability only while the claimant enjoyed insured status. *Estep v. Weinberger*, 525 F.2d 757, 757-58 (6th Cir. 1975). Medical evidence that postdates the insured status date may be, and ought to be, considered, but only insofar as it bears on the claimant's condition before the expiration of insured status. *Begley v. Mathews*, 544 F.2d 1345, 1354 (6th Cir. 1976) ("Medical evidence of a subsequent condition of health, reasonably proximate to a preceding time, may be used to establish the existence of the same condition at the preceding time."); *Higgs*, 880 F.2d at 863.

The evidence of later-experienced medication side effects here has little to do with the plaintiff's condition during the relevant period. And the ALJ's discounting of the plaintiff's complaints of drowsiness is justified by his observation that the plaintiff admitted driving and taking care of his daughter. Tr. 25. As the Commissioner noted, the plaintiff testified that he took medication every four hours and had side effects for "four hours after taking it, three hours after taking it," and within "four hours I'm already taking the next [pill]." Tr. 49. That testimony is inconsistent with the plaintiff's professed ability to drive, and that inconsistency properly was considered by the ALJ.

The plaintiff's third objection will be overruled.

## III.

The plaintiff forfeited his right to challenge the appointment of ALJ Christensen by not raising his Appointments Clause objection during the administrative process and before coming to court. The magistrate judge properly reviewed the administrative record and applied the correct law in reaching her conclusion that the ALJ's determination was supported by substantial evidence.

Accordingly, it is **ORDERED** that the Commissioner's objection to the report and recommendation (ECF No. 26) is **SUSTAINED**, and the magistrate judge's report and recommendation (ECF No. 24) is **ADOPTED IN PART AND REJECTED IN PART**.

It is further **ORDERED** that the plaintiff's objections (ECF No. 27) are **OVERRULED**.

It is further **ORDERED** that the plaintiff's motion for summary judgment (ECF No. 11) is **DENIED**.

It is further **ORDERED** that the defendant's motion for summary judgment (ECF No. 15) is **GRANTED**. The findings of the Commissioner are **AFFIRMED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Date:    March 29, 2019

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on March 29, 2019.

s/Susan K. Pinkowski

SUSAN K. PINKOWSKI